United States Bankruptcy Court
Eastern District of Tennessee

| | | |
|---|---|---|
| In re | Massengill Investments LLC | Case No. |
| | Debtor(s) | Chapter |

1:18-bk-10733 SDR

11

## MASSENGILL INVESTMENTS LLC'S
## FIRST AMENDED PLAN OF REORGANIZATION,
## DATED FEBRUARY 23, 2019

### ARTICLE 1
### SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay Creditors of Massengill Investments LLC (the "Debtor") from cash flow from operations.

This Plan provides for one class of Secured Claims; two classes of Unsecured Claims; and one class of Equity Interests. General Unsecured Creditors holding Allowed Claims will receive distributions over the course of five (5) years, which the Debtor has valued at .20 cents on the dollar. This Plan also provides for the payment of Administrative and Priority Claims in full, provided, however if payment in full is not made on the Effective Date of this Plan, to the extent permitted by the Bankruptcy Code and/or Claimant's agreement, such Claims will be paid in regular payments not to exceed sixty (60) months from the Petition Date with statutory interest.

All Creditors and Equity Interest Holders should refer to Articles 2 through 6 of this Plan for information regarding the precise treatment of their Claim. A Disclosure Statement that provides more detailed information regarding this Plan and the rights of Creditors and Equity Interest Holders has been circulated with this Plan. Your rights may be affected. You should read these documents carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.

### ARTICLE 2
### CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    Class 1.        Allowed Administrative Claims entitled to priority under §507 of the Code except Administrative Claims, and Priority tax Claims under §507(a)(8).

2.02    Class 2A.      The Allowed Atlantic Capital Bank Secured Claims.
          Class 2B.      The Allowed Strategic Funding Source, Inc. Claim.

2.03    Class 3.         All Allowed Unsecured Claims not classified otherwise under the Plan.

2.04    Class 4.        All Allowed Unsecured Convenience Claims.

2.05    Class 5.        Equity Interests of the Debtor.

ARTICLE 3
TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims.  Under Section §1123(a)(1), Administrative Claims and Priority tax Claims are not in classes.

3.02    Administrative Expense Claims.  Except with respect to Administrative Claims that are Professional Fee Claims and U.S. Trustee fees and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Case or a holder of an Allowed Administrative Claim and the Debtor agree to less favorable treatment, each holder of an Allowed Administrative Claim shall be paid in full in Cash on the unpaid portion of its Allowed Administrative Claim on the latest of:  (a) the first Business Day that is thirty (30) days from the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable.

Except as otherwise provided in this 3.02 and 3.05 and except with respect to Administrative Claims that are Professional Fee Claims, requests for payment of Allowed Administrative Claims must be filed and served on Reorganized Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date.  Except as otherwise expressly provided in the Plan or the Confirmation Order, holders of Administrative Claims that are required to, but do not file and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or its property and such Administrative Claims shall be deemed discharged as of the Effective Date.

3.03    Professional Fee Claims.

(a)    All Professionals seeking allowance by the Bankruptcy Court of Professional Fee Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Confirmation Date.

(b)    On the Effective Date, the Reorganized Debtor shall pay in cash the Debtor Professional Claim (provided that such payment is provisional until it is approved by the Court pursuant to Section 330 of the Bankruptcy Code).

(c)    The Reorganized Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

3.04    Priority Tax Claims.  Unless separately classified, each holder of an Allowed Priority tax Claim will be paid consistent with §1129(a)(9)(C) of the Code with applicable statutory interest. Debtor is current on all post-petition income taxes, withholding taxes, sales taxes and ad valorem taxes and shall remain current, to and after the Effective Date.

3.05    United States Trustee Fees.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

ARTICLE 4
TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interests shall be treated as follows under this Plan:

1.    Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.  The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $-0- | Paid in full on the Effective Date of the Plan, or according to terms of obligation if later than the Effective Date, or by separate written agreement. |
| Estimated Professional Fees, as approved by the Court. | $50,000 | Paid in full on the Effective Date of the Plan, or according to separate written agreement, after approval of the fee amount or according to court order if such fees have not been approved by the Court on the Effective Date of the Plan |
| Clerk's Office Fees | N/A | Paid in full on the Effective Date of the Plan |
| Other administrative expenses | N/A | Paid in full on the Effective Date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | $4,875 Est | Paid in full on the Effective Date of the Plan |
| TOTAL | $54,875.00 | |
| | | |

2.    Priority Tax Claims

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief, in addition to any statutory interest.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Impairment | Treatment |
|---|---|---|---|

| Internal Revenue Service:<br>City of Cleveland | $269,185 | Unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid consistent with §1129(a)(9)(C) of the Code in addition to statutory interest. The first payment will begin the first Business Day that is thirty (30) days from the Effective Date. |
| | $26,485<br>(property tax) | | |
| Hamilton County Trustee | $44,787<br>(property tax) | | |
| Tennessee Department of Revenue | $132,682<br>(sales tax) | | |
| Tennessee Department of Labor | $9667 | | |

3.    Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.    Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and its proposed treatment under the Plan:

| Class 2A. | Insider | Impairment | |
|---|---|---|---|
| Secured claims of:<br>Atlantic Capital Bank<br><br>Collateral Description = real estate accounts receivable, inventory, furnishings, fixtures, furniture, equipment, general intangibles, and all other collateral securing the Debtor's pre-petition obligations.<br><br>Total Allowed Secured Claims Amount =<br>$2,062,837 more or less<br><br>Priority of lien = First<br><br>_____ | No<br><br><br><br><br><br><br><br><br><br><br><br><br><br>_____ | Impaired<br><br><br><br><br><br><br><br><br><br><br><br><br><br>_____ | Atlantic Capital Bank's Allowed Secured Claims in the amount of $2,062,837, more or less, shall be paid in monthly payments in the amount of $12,500. The Allowed Secured Claims of Atlantic Capital Bank will pay interest at the contract rate. There will be a balloon payment due on the thirty sixth (36) month after the Effective Date at which time the remaining balance owed to Atlantic Capital Bank will be due and payable. |

| | | | |
|---|---|---|---|
| Class 2.B.<br><br>Secured claim of:<br>Strategic Funding Source, Inc.<br><br>Collateral Description = UCC1 on Debtor's receivables<br><br>Total Secured Claim Amount = $46,536<br><br>  Priority of lien =  Second | No | Impaired | Strategic Funding Source, Inc's Claim will be paid as a Class 3 Claim<br><br>This Claimant's claim on Debtor's receivables is second priority to Atlantic Capital Bank's claim, Debtor believes there is no equity for Strategic Funding Source, Inc. over and above Atlantic Capital Bank's secured claim and its claim is therefore a Class 3 claim. |

Treatment of Class 2.

The Atlantic Capital Bank's Secured Claims shall be treated as follows:

(a)  <u>Allowance of Claims</u>.  The Atlantic Capital Bank's Secured Claims, Claim Numbers 8, 23 and 24, shall be deemed allowed on the Effective Date unless such claim(s) are objected to as provided herein.

(b)  <u>Treatment; Amendment, Restatement and Assumption; No Novation</u>.   On the Effective Date, the Atlantic Capital Bank Secured Claims shall be amended, restated, modified, and assumed by the Reorganized Debtors pursuant to the Plan terms.   The Plan terms shall constitute an amendment and restatement of the pre-petition loan documents and are not intended to constitute, and shall not constitute, a novation, accord and satisfaction, discharge or payment in full of the Atlantic Capital Bank Secured Claims, which shall remain outstanding and shall be governed by and paid in accordance with the Plan terms from and after the Effective Date.   Notwithstanding anything to the contrary in this Plan or the Confirmation Order, (i) none of the Atlantic Capital Bank Secured Claims shall be discharged, satisfied or released or otherwise affected in whole or in part, and each of the Atlantic Capital Bank Secured Claims shall remain outstanding from and after the Effective Date, and (ii) none of the Atlantic Capital Bank Liens shall be deemed to have been waived, released, satisfied or discharged and all of the Atlantic Capital Bank Liens shall continue in effect and continue to encumber all collateral to which such Atlantic Capital Bank Liens have attached at any time prior to the Effective Date and shall continue to enjoy such perfection and priority as such Atlantic Capital Bank Liens had prior to the Effective Date.

(c)  <u>Payment of Atlantic Capital Bank Secured Claims.</u>  Atlantic Capital Bank Secured Claims in the amount of $2,062,837, more or less, shall be paid monthly payments in the amount of $12,500. The Allowed Secured Claims of Atlantic Capital Bank will be paid interest at the contract rate. There will be a balloon payment due on the 36th month after the Effective Date at which time the remaining balance owed to Atlantic Capital Bank will be due and payable.

---

2.  <u>Classes of Priority Unsecured Claims</u>

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.  However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan: N/A

3.  <u>Classes of General Unsecured Claims</u>

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. The following chart identifies the Plan's proposed treatment of Classes 2 through 3, which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| Class 3 - | General Unsecured Creditors | Impaired. | Holders of Allowed Unsecured Claims not separately classified under the Plan shall receive payments in cash in an amount equal to thirty (30%) percent of each holder's Allowed Unsecured Claim payable in quarterly payments beginning the first Business Day of the month thirty (30) days following the Effective Date until the earlier of (a) five (5) years after the Effective Date, or (b) until the Allowed Unsecured Claims paid in full. |
| Class 4 - | Unsecured Convenience Class | Impaired. | Class 4 consists of the unsecured claims held by unsecured creditors that are in an amount up to $500 and any unsecured claims held by unsecured creditors that elect on the ballot to reduce their claim to $500 to be treated as Class 4 claimant instead of treatment as a general unsecured creditor under Class 3.<br>Holders of Allowed Convenience Claims shall receive payment in full in Cash on account of each holder's Allowed Convenience Claim on or before the first Business Day that is ninety (90) days following the Effective Date. |
|  |  |  |  |
|  |  |  |  |

4.    Class of Equity Interest Holders

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders.  In a partnership, equity interest holders include both general and limited partners.  In a limited liability company ("LLC"), the equity interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 5 | Equity interest holders:<br>B. Lynn Massengill, Jr. (24.5%)<br>Barry L. Massengill, Sr. (1%)<br>Laura Massengill Moore (24.5%)<br>Massengill Family 2012 Irrevocable Trust (49%)<br>Pamela Massengill (1%) | Impaired | Class will receive no payments under the Plan but will retain their ownership of the Reorganized Debtor |

# ARTICLE 5
## PROCEDURES FOR DETERMINATION OF CLAIMS

5.01    Objections to Claims. Notwithstanding the occurrence of the Effective Date, and except as to (i) the Stipulated Expense Claims and (ii) any Claim that has been Allowed prior to the Effective Date, Reorganized Debtor may object to the allowance of any Claim against the Debtor or seek estimation thereof on any grounds permitted by the Bankruptcy Code by filing the appropriate pleading in the Bankruptcy Court in accordance with Section 5.05 herein.

5.02    Disputed Claims. No payments or other distributions will be made to holders of Claims unless and until such Claims are Allowed Claims.  If a Claim is not an Allowed Claim by or on the Effective Date or when payment is otherwise due under the Plan, payment on the Allowed Claim (plus interest, if any, payable under the Plan) will commence when a Claim becomes an Allowed Claim after the Effective Date.

5.03    Treatment of Contingent Claims.  Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions under the Plan. The holder of a contingent Claim will only be entitled to a distribution under the Plan when and if such contingent Claim becomes an Allowed Claim.

5.04    Payments Effective Upon Tender.  Whenever the Plan requires payment to be made, such payment will be deemed made and effective upon tender thereof by the Debtor or Reorganized Debtor to the Creditor to whom payment is due. If any Creditor refuses a tender, the amount tendered and refused will be held by the Debtor or Reorganized Debtor for the benefit of that Creditor pending final adjudication of the dispute. However, when and if the dispute is finally adjudicated and the Creditor receives the funds previously tendered and refused, the Creditor will be obliged to apply the funds in accordance with the Plan as of the date of the tender; and while the dispute is pending and after adjudication thereof, the Creditor will not have the right to claim interest or other charges or to exercise any other rights which would be enforceable by the Creditor if the Debtor or Reorganized Debtor failed to pay the tendered payment.

5.05    Objections to Administrative Claims, Claims, and Equity Interests. The Debtor and Reorganized Debtor (as applicable) will be entitled to object to Administrative Claims and Claims. Any objections to Claims will be filed and served by the later of:  (i) the Claim Objection Deadline or (ii) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) above. Any objections to Administrative Claims will be filed and served by the later of: (x) forty-five (45) days after the Administrative Claims Bar Date or (y) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (x) above. All objections will be litigated to Final Order; provided, however, that the Debtor and Reorganized Debtor will have the authority to file, settle, compromise, or withdraw any objections without Bankruptcy Court approval.

## ARTICLE 6
### PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor assumes the following Executory Contracts effective upon the Effective Date of this Plan:

| Name of Other Parties to Lease or Contract |
| --- |
| Voiceopia- Telephone System |

6.02    Rejected Executory Contracts and Unexpired Leases.

(a)    The Debtor rejects the following Executory Contracts effective upon the Effective Date of this Plan:

| Name of Other Parties to Lease or Contract |
| --- |
| Harris Tire Co., Inc. |

(b)    The proposed cure amount for an Executory contract that is assumed pursuant to this Plan shall be zero dollars unless otherwise indicated by the Debtor. Cure obligations, if any, shall be satisfied, pursuant to Bankruptcy Code Section 365(b)(1). By payment of the cure amount in Cash on or before the first Business Day that is sixty (60) days from the Effective Date or on such other terms as the parties to such Executory Contract may otherwise agree. In the event of a dispute regarding (a) the amount of any cure payments (b) the ability of Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of Bankruptcy Code Section 365) under the Executory Contract or unexpired lease to be assumed or (c) any other matter pertaining to assumption, any cure payments required by Bankruptcy Code Section 365(b)(1) shall be made following entry of a Final Order resolving the dispute and approving the assumption; provided, however, that following the resolution of any such dispute, the Debtor or Reorganized Debtor shall have the right to reject such Executory Contract.

(c)    The Debtor will be conclusively deemed to have rejected Executory Contracts not expressly assumed under Section 6.01(a) above, or before the date of the order confirming this Plan. A proof of a Claim arising from the rejection of an Executory Contract under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE 7
### MEANS FOR IMPLEMENTATION OF THE PLAN

7.01.    Plan Administration Fund.    Reorganized Debtor will establish a separate bank account from which it will make payments to Administrative, Priority, Convenience, and Unsecured Claims pursuant to the Plan (the "Plan Administration Fund"). Reorganized Debtor will fund the Plan Administration Fund with Cash necessary to pay any payments required on or after the Effective Date.

7.02.    Finalize and Execute Plan Documents. Reorganized Debtor will take any and all necessary steps in order to finalize the Plan Documents. Reorganized Debtor will cause the Plan Documents to be executed by an appropriate officer of Reorganized Debtor.

7.03.    Continued Existence and Vesting of Assets in Reorganized Debtor.  Subject to the Plan Documents, Reorganized Debtor will continue to exist after the Effective Date as a separate legal entity, with all the powers available to such entity under applicable Tennessee law and pursuant to its Articles of Organization and other organizational documents in effect prior to the Effective Date as such may be amended by the Plan or any Plan Document, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date. Except as otherwise provided in the Plan or Plan Documents, on and after the Effective Date, all property of the Estate and any property acquired by the Debtor or Reorganized Debtor under the Plan will vest in Reorganized Debtor in accordance with Section 11.02.   On and after the Effective Date, Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims or Equity Interests, without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

7.04    Management of Reorganized Debtor. The Reorganized Debtor will be managed by Barry Massengill and any other present officers or managers, if any.

7.05    Funding after the Effective Date. The funds necessary to ensure continuing performance under the Plan after the Effective Date will be (or may be) obtained from:

(a) any and all remaining Cash retained by Reorganized Debtor after the Effective Date;

(b) cash generated from the post-Effective Date operations of Reorganized Debtor; and

(c) any other contributions or financing (if any) which Reorganized Debtor may obtain on or after the Effective Date.

## ARTICLE 8
## PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN

8.01    Non-consensual Confirmation. If any impaired Class of Claims or Equity Interests entitled to vote does not accept the Plan by the requisite statutory majority provided in Bankruptcy Code §1126(c), Debtor reserves the right to amend the Plan or undertake to have the Bankruptcy Court confirm the Plan under Bankruptcy Code §1129(b) or both. With respect to any impaired Class of Claims that rejects the Plan, the Debtor will request that the Bankruptcy Court confirm the Plan pursuant to Bankruptcy Code §1129(b). To the extent any Class rejects the Plan by virtue of the treatment provided to such Class the Debtor will seek to have the Plan "crammed down" on the claimants within such Class pursuant to Bankruptcy Code §1129(b).

8.02    Manner of Distributions. Any payment of Cash made by Reorganized Debtor pursuant to the Plan may, at Reorganized Debtor's option, be made by check drawn on a domestic bank or wire transfer.

8.03    Timing of Distributions. In the event that any payment, distribution, or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but will be deemed to have been completed as of the required date.

8.04    Maximum Distribution. Notwithstanding anything otherwise to the contrary, in no event will a holder of an Allowed Claim or Equity Interests which has been Allowed, be entitled to receive consideration

which results in a distribution of greater than payment in full with respect to such Allowed Claim.

8.05    De Minimis Distributions. Except for Claims classified in Class 4 under the Plan, the Debtor or Reorganized Debtor will make no distributions of less than $100 to any Creditor holding an Allowed Claim. If a Creditor holding an Allowed Claim does not receive a distribution due to the provisions of this section on any date on which a distribution is to be made to Creditors in the same Class as the Creditor being entitled to such de minimis payment, then the Claim (so long as it is an Allowed Claim) will remain eligible for distributions on any subsequent Distribution Date, subject to the provisions of this section. In all events, the Creditor holding an Allowed Claim which has not received a distribution on any previous Distribution Dates because of this provision, will receive such distribution on the date that final distribution is made to Creditors in the same Class as the Creditor being entitled to such de minimis payment.

8.06    Interest on Claims. Unless otherwise provided in instruments that either take effect on the Effective Date or remain unaltered by the Plan, interest on any Allowed Claims that is payable under the Plan will be simple interest and will not be compound interest. In all events, there will be no default interest payable with respect to any Allowed Claims.

8.07    Withholding Taxes on Distributions. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law will be deducted from distributions hereunder and no Person will be entitled to any additional distribution as a result of any such withholding. All Persons holding Claims will be required to provide any information necessary to affect the withholding of such taxes.

8.08    Disputed Payment of Allowed Claims. If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any distribution, Reorganized Debtor may, in lieu of making such distribution to such Person make such distribution into an escrow account until the disposition thereof will be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute.

8.09    Unclaimed Distributions. All distributions under the Plan that are unclaimed for a period of one (1) year after distribution thereof (or an attempt to effect such distribution) in accordance with the Plan will be deemed unclaimed property under Bankruptcy Code §347(b), and such unclaimed property will be forfeited by any holder of a Claim originally entitled thereto hereunder, whereupon all right, title and interest in and to such unclaimed property will immediately and irrevocably be available for future distributions to holders of Allowed Claims hereunder in accordance with the terms of the Plan, and the holder of the Allowed Claim previously entitled to such unclaimed property will cease to be entitled thereto and any entitlement of any holder of any Claim to such distributions will be extinguished and forever barred.

ARTICLE 9
MODIFICATION OF PLAN

Alterations, amendments, or modifications of or to the Plan, including, without limitation, to provide for treatment different than that set forth herein with respect to any Class of Claim  (including impairment of Classes that are unimpaired hereunder) may be proposed in writing by the Debtor, at any time prior to the Confirmation Date, provided that the Plan, as altered, amended, or modified, satisfies the conditions of Bankruptcy Code §§1122 and 1123, and the Debtor will have complied with Bankruptcy Code §1125. The Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended, or modified, satisfies the requirements of Bankruptcy Code §§1122 and 1123 and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under Bankruptcy Code §1129 and the circumstances warrant such alterations, amendments, or modifications. A holder of a Claim or the Equity Interests that have accepted the Plan will be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or

modification does not materially and adversely change the treatment of the Claim or the Equity Interests of such holder.

## ARTICLE 10
## EFFECT OF CONFIRMATION

10.01   <u>Binding Effect</u>. From and after the Confirmation Date, the Plan will be binding and inure to the benefit of the Debtor, all present and former holders of Claims and Equity Interests, and their respective assigns, including Reorganized Debtor.

10.02   <u>Vesting of Assets</u>. Upon the Effective Date, pursuant to Bankruptcy Code §§1141(b) and (c), except to the extent such property is not to be retained by the Debtor, and except with respect to any and all Liens and security interests (which shall survive), all property of the Estate will vest in Reorganized Debtor free and clear of all Claims, liens, encumbrances, charges, and other interests, except as otherwise provided in this Plan or in the Confirmation Order. From and after the Effective Date, Reorganized Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided herein. Without limiting the foregoing, pursuant to Bankruptcy Code §1123(b)(3), except for any Causes of Action expressly waived by the Debtor pursuant to the terms of the Plan, Reorganized Debtor will retain and will have the exclusive right, in its discretion, to enforce against any Person any and all Causes of Action of the Debtor.

10.03   <u>Discharge of the Debtor and of Claims.</u> Upon the Effective Date and in consideration of the rights afforded in the Plan and the payments and distributions to be made hereunder, except as otherwise provided herein or in the Confirmation Order, each holder (as well as any trustees and agents on behalf of each holder) of a Claim and any affiliate of such holder will be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted by Bankruptcy Code §1141, of and from any and all Claims, rights, and liabilities that arose prior to the Effective Date of any kind, nature, or description whatsoever, including any accrued interest who, in exchange for the treatment afforded to such Claims or under the Plan, and each such holder (as well as any trustees and agents on behalf of each such holder) of a Claim and any affiliate of such holder will be deemed to have granted, and will grant to the Debtor the waiver, release and discharge described in this section. Except as otherwise provided herein, upon the Effective Date, all such holders of Claims and their affiliates will be forever precluded and enjoined, pursuant to Bankruptcy Code §§105, 524, and 1141, from prosecuting or asserting any such discharged Claim in the Debtor or Reorganized Debtor, or against any of their assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a Proof of Claim.

10.04   <u>Term of Pre-Confirmation Injunctions or Stays</u>. Unless otherwise provided in the Plan, the Confirmation Order, or a separate order from the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case in accordance with Bankruptcy Code §§105 or 362, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the later of the Effective Date or the date indicated in such applicable order.

10.05   <u>Injunction Against Interference with Plan</u>. Upon the entry of the Confirmation Order, all holders of Claims and the Equity Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, will be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

10.

10.06   Termination of Subordination Rights and Settlement of Related Claims.

(a) Except as provided herein, the classification and manner of satisfying all Claims and the Equity Interests and the respective distributions and treatments under the Plan, take into account or conform to the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Bankruptcy Code §510(b), or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan. The Confirmation Order will permanently enjoin, effective as of the Effective Date, all Persons from enforcing or attempting to enforce any such contractual, legal, and equitable rights satisfied, compromised, and settled pursuant to this Article.

(b) Pursuant to Bankruptcy Rule 9019 and in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all Claims or controversies relating to the subordination rights that a holder of a Claim or the Equity Interests may have or any distribution to be made pursuant to the Plan on account of such Claim or Equity Interests. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtor, the Reorganized Debtor, their respective properties, and holders of Claims and Equity Interests, and is fair, equitable, and reasonable.

10.07   Retention of Causes of Action/Reservation of Rights.

(a) Except as specifically provided herein, nothing contained in the Plan or the Confirmation Order will be deemed to be a waiver or the relinquishment of any rights, Claims, or Causes of Action that the Debtor may have or which a Debtor may acquire pursuant to the Plan or applicable law and choose to assert on behalf of the Estate or itself, in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any and all Claims against any Person, to the extent such Person asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor, Reorganized Debtor, or any of their officers, directors, members, agents, or representatives, provided, however, all Avoidance Actions shall be released and waived.

(b) Nothing contained in the Plan or the Confirmation Order will be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan. Reorganized Debtor will have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, or other legal or equitable defenses which the Debtor had immediately prior to the Petition Date as fully as if the Chapter 11 Case had not been commenced, and all of Reorganized Debtor's legal and/or equitable rights respecting any Claim left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.

ARTICLE 11
RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Bankruptcy Court will retain jurisdiction for the following purposes:

11.01   In General. The Bankruptcy Court will retain jurisdiction to determine the allowance and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Debtor, by Reorganized Debtor, or by any other party in interest entitled to proceed in that manner. As part of such retained

jurisdiction, the Bankruptcy Court will continue to determine the allowance of Administrative Claims and any request for payment thereof, including Professional Fee Claim.

11.02  <u>Plan Disputes and Enforcement</u>. The Bankruptcy Court will retain jurisdiction to determine any dispute which may arise regarding the interpretation of any provision of the Plan. The Bankruptcy Court also will retain jurisdiction to enforce any provisions of the Plan, the Plan Documents and any and all other documents relating to the Plan. The Bankruptcy Court will also retain jurisdiction over any matter relating to the implementation, effectuation and/or consummation of the Plan as expressly provided in any provision of the Plan.

11.03  <u>Further Orders</u>. The Bankruptcy Court will retain jurisdiction to facilitate the performance of the Plan by entering, consistent with the provisions of the Plan, any further necessary or appropriate order regarding enforcement of the Plan and any provision thereof. In addition, the Bankruptcy Court will retain jurisdiction to facilitate or implement the allowance, disallowance, treatment, cancellation or satisfaction of any Claim, or any portion thereof, pursuant to the Plan.

11.04  <u>Final Decree</u>. The Bankruptcy Court will retain jurisdiction to enter an appropriate final decree in the Chapter 11 Case.

11.05  <u>Appeals</u>. In the event of an appeal of the Confirmation Order or any other kind of review or challenge to the Confirmation Order, and provided that no stay of the effectiveness of the Confirmation Order has been entered, the Bankruptcy Court will retain jurisdiction to implement and enforce the Confirmation Order and the Plan according to their terms, including, but not limited to, jurisdiction to enter such orders regarding the Plan or the performance thereof as may be necessary to effectuate the reorganization of the Debtor.

11.06  <u>Executory Contracts</u>. The Bankruptcy Court will retain jurisdiction to determine any and all motions regarding assumption or rejection of Executory Contracts.

11.07  <u>Claims</u>. The Bankruptcy Court will retain jurisdiction: (a) to hear and determine any bankruptcy-related Claim or bankruptcy-related Cause of Action by or against the Debtor; and (b) to adjudicate any bankruptcy-related Causes of Action or other bankruptcy-related proceedings currently pending or otherwise referenced here or elsewhere in the Plan, including, but not limited to, any and all "core proceedings" under 28 U.S.C. §157(b) which may be pertinent to the Chapter 11 Case and which the Debtor or Reorganized Debtor may deem appropriate to initiate and prosecute before the Court in aid of the implementation of the Plan.

ARTICLE 12
MISCELLANEOUS PROVISIONS

12.01  <u>Effectuating Documents and Further Transactions</u>. Each of the Debtor and Reorganized Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, the Plan Documents, and any securities issued pursuant to the Plan.

12.02  <u>Corporate Action</u>. On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the directors, members, managers or partners of one or more of the Debtor or Reorganized Debtor, including, without limitation, (i) the authorization to issue or cause to be issued the new equity interests, (ii) the amendment of Reorganized Debtor's operating agreement, (iii) the election or appointment, as the case may be, of directors, officers or managers of Reorganized Debtor, and (iv) the qualification of Reorganized Debtor to conduct their businesses from and after the Effective Date, may occur

without any requirement of further action by the stockholders, directors, members, managers, or partners of the Debtor.

12.03   <u>Exemption from Transfer Taxes</u>. Pursuant to Bankruptcy Code §1146(c), the transactions to occur after entry of the Confirmation Order and on or before the Effective Date or otherwise pursuant to the Plan, including, but not limited to, and all other transactions, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale, assignments or Plan Documents executed in connection with any of the transactions contemplated under the Plan, will constitute a "transfer under a plan" and will not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax

12.04   <u>Revocation or Withdrawal of the Plan</u>. The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date. If Debtor revokes or withdraws the Plan prior to the Effective Date, then the Plan will be deemed null and void. In such event, nothing contained herein will constitute or be deemed a waiver or release of any Claims or prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor. Neither the filing of the Plan, nor any statement or provision contained herein or therein, nor the taking of any action by Debtor with respect to the Plan will be or will be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims prior to the Effective Date or with respect to any matter which is pending before or may come before the Bankruptcy Court for determination in the Chapter 11 Case.

12.05   <u>Confirmation Order</u>. The Confirmation Order will, and is hereby deemed to, ratify all transactions effected by the Debtor during the period commencing on the Petition Date and ending on the Effective Date, except for any acts constituting willful misconduct, gross negligence, recklessness or fraud.

12.06   <u>Severability</u>. If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.07   <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit or schedule provides otherwise the rights, duties, and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, the laws of the State of Tennessee, without giving effect to any contrary result otherwise required under applicable choice or conflict of law rules.

12.08   <u>Binding Effect</u>. The Plan will be binding upon and inure to the benefit of the Debtor, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, Reorganized Debtor.

12.09   <u>Exhibits/Schedules</u>. n/a.

12.10   <u>Payment of Statutory Fees and Filing of Quarterly Reports</u>. All fees payable pursuant to Section

1930 of Title 28 of the United States Code, 28 U.S.C. § 1930, as determined by the Bankruptcy Court at or in conjunction with the Confirmation Hearing, will be paid on or before the Effective Date and, thereafter, in accordance with applicable bankruptcy law. All quarterly reports of disbursements required to be filed by applicable bankruptcy law will be filed in accordance with applicable bankruptcy law.

12.11   <u>No Professional Fees or Expenses</u>. No professional fees or expenses will be paid by the Debtor or Reorganized Debtor with respect to any Claim except as specified in the Plan or as Allowed by a Final Order of the Court.

12.12   <u>Headings</u>. The headings of the articles, paragraphs, and sections of the Plan are inserted for convenience only and will not determine the interpretation of the substantive provisions of the Plan.

12.13   <u>Default</u>. If any payment required under this Plan is not paid on or before the date specified herein, the Debtor shall have thirty (30) days to make said payment before being deemed in default. If Reorganized Debtor defaults on the payment of a tax debt due to the IRS under the Plan, then the entire tax debt still owed to the IRS shall become due and payable immediately and the IRS may collect these unpaid tax liabilities through the administrative collection provisions of the Internal Revenue Code.

12.14   <u>Construction</u>.   This Plan has been negotiated and drafted through the joint efforts of the Reorganized Debtor, Creditors and their respective counsel.   Neither the provisions of this Plan nor any alleged ambiguity herein shall be interpreted or resolved against any party on the grounds that such party or its counsel drafted this Plan or based on any other rule of strict construction.   The Reorganized Debtor, and creditors represent that they have carefully read this Plan and all other instruments and agreements executed or delivered in connection herewith and that such party knows the contents hereof and has agreed to the same freely and voluntarily.

12.15   <u>Setoff/Recoupment</u>.   Nothing in the Plan, the Order confirming the Plan or any document implementing the Plan shall affect any setoff or recoupment right of the United States.  However, the IRS will not seek a setoff or recoupment for any liabilities encompassed by its proof(s) of claim filed in the bankruptcy unless the debtor defaults on its plan payments to the IRS.  The IRS may seek a setoff or recoupment for future liabilities that are not encompassed by its proof(s) of claim, and the IRS may use other collection efforts consistent with Paragraph 12.13 of the Plan.

ARTICLE 13
DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan.  Such meanings shall be equally applicable to both the singular and plural forms of such terms.  Any term used in initially capitalized form in this Plan that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code.

13.1   "<u>Administrative Claim</u>" means a Claim for costs and expenses of administration of the Chapter 11 Case that is Allowed under Bankruptcy Code Sections 503(b), 507(a), or 1114(e)(2) for the period from the Petition Date to the Effective Date, including, without limitation, (a) any actual and necessary expenses of preserving the Estates; (b) any actual and necessary expenses of operating the Debtor's business; (c) any actual indebtedness or obligations incurred or assumed by the Debtor during the pendency of the Chapter 11 Case in connection with the conduct of their business; (d) any actual expenses necessary or appropriate to facilitate or effectuate the Plan; (e) any amount required to be paid under Bankruptcy Code Section 365(b)(1) in connection with the assumption of Executory Contracts; (f) all allowances of compensation or reimbursement of expenses

to the extent Allowed by the Bankruptcy Court under Bankruptcy Code Sections 328, 330(a), 331 or 503(b)(2), (3), (4) or (5); (g) Claims arising under Bankruptcy Code Section 503(b)(9); and (h) all fees and charges payable pursuant to Section 1930 of Title 28 of the United States Code.

13.2    "Administrative Claims Bar Date" means the Business Day which is thirty (30) days after the Effective Date, or such other date as approved by Final Order of the Bankruptcy Court.

13.3    "Allowed" means, with reference to any Claim: (i) a Claim against the Debtor, proof of which, if required, was filed on or before the Bar Date, which is not a Disputed Claim, (ii) if no proof of Claim was so filed, a Claim against the Debtor that has been or hereafter is listed by the Debtor in his Schedules as liquidated in amount and not disputed or contingent, or (iii) a Claim allowed hereunder or by Final Order.  An Allowed Claim does not include any Claim or portion thereof which is a Disallowed Claim or which has been subsequently withdrawn, disallowed, released or waived by the holder thereof, by this Plan, or pursuant to a Final Order.  Unless otherwise specifically provided in this Plan, an Allowed Claim shall not include any amount for punitive damages or penalties.

13.4    "Avoidance Actions" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtor pursuant to any applicable Bankruptcy Code section, including Bankruptcy Code Sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

13.5    "Ballot" shall mean the forms mailed to holders of Claims for the purpose of voting to accept or reject the Plan.

13.6    "Bankruptcy Code or "Code" means Title 11 of the United States Code, as amended.

13.7    "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Eastern District of Tennessee, Chattanooga Division.

13.8    "Bar Date" means the date fixed by the Bankruptcy Court by which a proof of claim must have been filed against the Debtor.

13.9    "Business Day" means any day, other than a Saturday, Sunday or legal holiday (as the term is defined in Bankruptcy Rule 9006(a).

13.10    "Cash" means cash and cash equivalents, in legal tender of the United States of America.

13.11    "Causes of Action" means all actions, causes of action (including Avoidance Actions), liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, in each case held by the Debtor, whether disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

13.12    "Chapter 11 Case" means the above entitled and numbered case filed by the Debtor pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

13.13    "Claim"  means: (i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured

or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

13.14 "Claim Objection Deadline" means the first Business Day, which is at least 120 days after the Effective Date, or such later date as may be established by the Bankruptcy Court in accordance with Section 5.05 of this Plan.

13.15 "Claimant" means a holder of a Claim.

13.16 "Class" means all of the holders of Claims against the Debtor that have been designated as a class in the Plan.

13.17 "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order.

13.18 "Confirmation Date" means the date of entry by the Court of an order confirming the Plan.

13.19 "Confirmation Hearing" means the hearing or hearings to be held before the Bankruptcy Court in which Debtor shall seek Confirmation of this Plan.

13.20 "Confirmation Order" means the Order confirming this Plan, together with any supplements, amendments or modifications thereto.

13.21 "Committee" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee pursuant to Bankruptcy Code Section 1102(a), as it may be reconstituted from time to time, if any.

13.22 "Convenience Claim" means any Allowed Unsecured Claim equal to or less than $500.

13.23 "Creditor" means holder of a Claim as of the Petition Date.

13.24 "Debtor" or "Debtor-in-Possession" means Massengill Investments, Inc.

13.25 " Debtor Professional Claims" means all unpaid claims for professional fees and reimbursement of expenses of any Professional employed by any Debtor or Reorganized Debtor, including, without limitation, Scarborough & Fulton.

13.26 "Disallowed Claim" means a Claim against the Debtor, or any portion thereof, (i) that has been disallowed by Final Order; including Final Orders entered after entry of the Confirmation Order; (ii) proof of which has been untimely filed and as to which no Order of allowance has been entered by the Bankruptcy Court; or (iii) listed as disputed, contingent or unliquidated and as to which no proof of claim has been timely filed.

13.27 "Disclosure Statement" means the Disclosure Statement for this Plan, together with any supplements, amendments or modifications thereto.

13.28 "Disputed" means, with respect to any Claim, any: (a) Claim that is listed on the Schedules as unliquidated, disputed or contingent; (b) Claim as to which the Debtor or any other party in interest have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a

Final Order; (c) Claim evidenced by a Proof of Claim which amends a Claim scheduled by the Debtor as contingent, unliquidated, or disputed, with respect to which the Debtor or any other party in interest have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; (d) Claim for which a Proof of Claim has been filed in an unliquidated amount; or (e) Claim that is not an Allowed Claim.

13.29  "Distribution" means any payment under the Plan.

13.30  "Distribution Date" means the date specified in the Plan on which payment to any classified or unclassified claimant shall be made.  If not specified in the Plan with regard to a Class of Claims, then the Distribution Date shall be the first day of the month following the Effective Date.

13.31  "Effective Date" means, subject to satisfaction of all applicable conditions precedent, (i) the first business day of the month following the expiration of thirty (30) days following the date on which the Confirmation Order becomes a Final Order; or (ii) in the event the Confirmation Order is appealed or a motion to reconsider is filed, the tenth (10th) day after the entry of a Final Order denying the motion, dismissing such appeal or affirming the Bankruptcy Court's Confirmation Order.

13.32  "Entity" includes any individual, partnership, corporation, estate, trust, governmental unit, person and the United States Trustee.

13.33  "Equity Interests" means the common stock, limited partnership interests, limited liability company interests, and any other equity, ownership, or profits interests issued by any Debtor and options, warrants, rights, or other securities or agreements to acquire the common stock, limited partnership interests, limited liability company interests, or other equity, ownership, or profits interests issued by any Debtor (whether or not arising under or in connection with any employment agreement).

13.34  "Estate" means the bankruptcy estate of the Debtor created by Section 541 of the Bankruptcy Code upon the commencement of their Chapter 11 Case.

13.35  "Exculpated Parties" n/a.

13.36  "Executory Contract" means any contract, including, without limitation, any unexpired lease, to which Debtor is a party and which is capable of being assumed or rejected pursuant to Section 365 of the Bankruptcy Code.

13.37  "Final Order"  means: (i) an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing, shall then be pending; or (ii) in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order may be appealed, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the Confirmation Order may be treated as a Final Order at the option of Debtor if no stay pending appeal has been obtained.

13.38  "Atlantic Capital Bank" means Atlantic Capital Bank.

13.39 "Impaired"  means the treatment of an Allowed Claim under this Plan unless, with respect to such Claim, either (i) this Plan leaves unaltered the legal, equitable, and contractual rights to which such Claim entitles the holder of such Claim; or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (A) cure any default that occurred before, on or after the commencement of the Chapter 11 Case other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstate the maturity of such Claim as such maturity existed before such default; (C) compensate the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) do not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim.

13.40 "IRS" means the United States Internal Revenue Service.

13.41 "Lien" means all valid and enforceable liens, security interests, claims and encumbrances against any property of the Debtor's Estate which have not been avoided pursuant to the Bankruptcy Code.

13.42 "Order" means an order or judgment of the Bankruptcy Court.

13.43 "Penalty Claims" of taxing authorities not entitled to priority pursuant to 11 USC §507(a)(8).

13.44 "Person" shall have the meaning ascribed to such term under Section 101(41) of the Bankruptcy Code.

13.45 "Petition Date" means February 20, 2018.

13.46 "Plan" means this Plan of Reorganization, as it may be amended or modified from time to time as permitted herein or in accordance with Section 1127 of the Bankruptcy Code.

13.47 "Plan Documents" means this Plan, the Disclosure Statement and any and all other documents necessary to effectuate this Plan.

13.48 "Priority Claim" means all Claims entitled to priority under Section 507(a)(1) -(a) (10) of the Bankruptcy Code.

13.49 "Professional" means a Person retained or to be compensated pursuant to Sections 327, 328, 330, 331, 1102, and 1103 of the Bankruptcy Code.

13.50 "Professional Fee Claims" means Administrative Claims of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred on or after the Petition Date through and including the Confirmation Date.

13.51 "Reorganized Debtor" means Massengill Investments LLC.

13.52 "Schedules" means those schedules and statement of financial affairs filed by the Debtor under Federal Rule of Bankruptcy Procedure 1007, as same may be amended from time to time.

13.53 "Secured Claims" means an Allowed Claim that is secured by a lien on or security interest in property in which the Estate has an interest, or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of a Claimant's interest in such Estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be.

13.54 "Unsecured" means an Allowed Claim that is not Secured or the unsecured portion of a Secured Claim.

Respectfully submitted,

MASSENGILL INVESTMENTS LLC

By: /s/ Barry L. Massengill, Sr.
    Barry L. Massengill, Sr., Member
    The Plan Proponent

By: /s/ David J. Fulton
    David J. Fulton #006102
    Attorney for the Plan Proponent